509 S.E.2d 275

OSPREY, INC. and W. Andrew Leheup, Appellants,

v.

CABANA LIMITED PARTNERSHIP, A South Carolina Limited Partnership; Maritime Development Corporation, A South Carolina Corporation; Bluewater Associates; William J. Reiner; Tompkins and McMaster, A South Carolina General Partnership; George Hunter McMaster; and Henry Dargan McMaster, Defendants,

Of Whom, Cabana Limited Partnership, A South Carolina Limited Partnership; Maritime Development Corporation, A South Carolina Corporation; Bluewater Associates; and William J. Reiner are, Respondents.

No. 2898.

Court of Appeals of South Carolina.

Heard Oct. 8, 1998.

Decided Nov. 5, 1998.

Rehearing Denied Jan. 30, 1999.

A. Camden Lewis, Anne D. Zuckerman and Carol C. Ruff, all of Lewis, Babcock & Hawkins, of Columbia, for appellants.

Henry Dargan McMaster and George H. McMaster, both of Tompkins & McMaster; Nelda T. Smyrl, of Columbia; and William J. Reiner, of New York, respondents pro se.

GOOLSBY, Judge:

Osprey, Inc., and W. Andrew Leheup (also referred to collectively as Plaintiffs) sued Cabana Limited Partnership, Maritime Development Corporation, Bluewater Associates, and William J. Reiner (also referred to collectively as Defendants) and others. In their complaint, Plaintiffs alleged breach of contract, breach of contract accompanied by a fraudulent act, fraud, collection, constructive trust, conversion, breach of fiduciary duty, and unfair trade practices. Plaintiffs appeal the trial court's dismissal of several of their causes of action on the ground of champerty. We affirm in part, reverse in part, and remand.

## BACKGROUND FACTS AND PROCEDURAL HISTORY

Beginning in 1990, Defendants Cabana and Reiner, among others, were plaintiffs in a federal lender liability action against Greyhound Real Estate Financing Company.[1] Tompkins & McMaster, a law firm in Columbia, South Carolina, represented Defendants in the federal litigation.

On March 18, 1993, while the federal suit was pending, Osprey, at the request of Tompkins & McMaster, agreed to pay Defendants $50,000 in exchange for an interest in the federal suit. Tompkins & McMaster had also represented Leheup, the president of Osprey, in various legal matters,

---

1. The facts are gleaned primarily from Osprey's complaints in this action. Because of the procedural posture of the case, the record does not contain answers to the complaints. On appeal, Osprey asserts Bluewater was also a plaintiff in the federal case. In support of this contention, Osprey cites its own complaint. Defendants, however, deny Bluewater was ever a party to the federal litigation.

including a trusteeship over certain properties of which Leheup was a beneficiary.

The agreement was executed by Leheup, in his capacity as president of Osprey, and Reiner, who signed individually and in his capacity as chief executive officer of Maritime, which in turn was a general partner of Cabana and Bluewater. The agreement provided in pertinent part as follows:

> The parties acknowledge each to the other that there exists a certain Lawsuit between Cabana Limited Partnership vs. Greyhound Real Estate Finance Company, et al., and that in consideration for the advancement of the funds above, the Fifty Thousand and no/100 ($50,000.00) Dollars, Osprey, Inc. is buying an interest in that said Lawsuit. If said Lawsuit is settled or tried with a verdict in excess of Fifty Thousand and no/100 Dollars ($50,000.00) Dollars, Osprey, Inc. will receive the sum of the amount of the verdict up to a maximum of One Hundred Fifty Thousand and no/100 ($150,000.00) Dollars and the Note will be considered satisfied and paid in full. If the Lawsuit is never settled or if tried and the outcome is not in favor of Cabana Limited Partnership in an amount of One Hundred Fifty Thousand and no/100 ($150,000.00) Dollars or more, then the Debtor will remain obligated for the Note amount of the Settlement or verdict but in no event less than Fifty Thousand and no/100 ($50,000.00) Dollars. Cabana is to notify its counsel of the terms hereof. Same being confirmed by letter.

The agreement also provided that Bluewater would assign as collateral to Osprey its right, title, and interest in all notes and mortgages it held as of March 15, 1993, as well as the proceeds of this collateral. In addition, Reiner executed, on behalf of Cabana and Bluewater, a $50,000 promissory note collateralized by certain timeshare notes set forth on a list attached to the note. Reiner also executed a personal guarantee on the note and assigned to Osprey all of his right, title, and interest in and to the first $150,000 gross proceeds from termination of the federal suit. Finally, as memorialized in a letter from Tompkins & McMaster to Leheup, Leheup agreed to provide consulting services for the federal litigation for a fee of $25,000. This agreement for consulting services was apparently unsecured and separate from the documents con-

cerning the advancement of funds by Osprey for litigation expenses.

On January 25, 1994, Cabana entered into a settlement agreement in connection with the federal suit. The terms and conditions of the settlement agreement were subject to an order of confidentiality issued by the federal court. Plaintiffs requested payment pursuant to the loan agreement, but Defendants would neither pay nor reveal voluntarily the terms of the settlement agreement.

Plaintiffs petitioned the federal court for access to the settlement documents. The federal court granted the petition. The settlement agreement revealed Defendants received $650,000, which was paid directly to Tompkins & McMaster, as escrow agents for Defendants. Pursuant to the settlement agreement, Tompkins & McMaster paid itself $200,000 in attorney fees from the proceeds.

The disposition of the remaining $450,000 is disputed. Plaintiffs assert Tompkins & McMaster was required to pay the Internal Revenue Service $450,000 of Cabana's proceeds resulting from levies related to the federal litigation. Defendants deny Tompkins & McMaster was required to pay the liens. Rather, Defendants contend the remaining $450,000 was to be held in escrow pending the outcome of certain tax liens levied against Greyhound, but nothing was being held in escrow for Cabana, Reiner, Bluewater, or Maritime. According to Defendants, Tompkins & McMaster would potentially have to reimburse Greyhound in the event Greyhound was required to pay the lien, but the settlement agreement expressly provided that, upon presentment of proof of discharge or release of the liens, the escrowed funds could be released to Tompkins & McMaster.[2]

Plaintiffs commenced the present action against Defendants in state court on March 7, 1994. In their initial complaint, Plaintiffs alleged breach of contract, breach of contract accompanied by a fraudulent act, fraud, collection, constructive trust, conversion, breach of fiduciary duty, and unfair trade practices. Subsequently, Plaintiffs filed a motion to amend the complaint, together with a proposed amended complaint dated

---

2. Defendants assert the Internal Revenue Service matters are still in litigation.

August 12, 1994. The trial court allowed the complaint to be amended as proposed. At that time, Plaintiffs agreed to drop their causes of action for conversion, unfair trade practices, and constructive trust. Plaintiffs served a second amended complaint dated February 7, 1996. This complaint dropped the causes of action for conversion, unfair trade practices, and constructive trust, and added, among other things, a cause of action for professional negligence. In response to Plaintiffs' submission of the second amended complaint, Defendants moved to dismiss, strike certain portions of the complaint, and require Plaintiffs to provide a more definite statement. Defendants asserted several grounds for dismissal, including an assertion that the agreement was champertous and therefore unenforceable. Plaintiffs then filed a motion to amend the second amended complaint and submitted another "second" amended complaint with a more definite statement.

At a status conference on November 6, 1996, the parties agreed to have the trial court rule only on Plaintiffs' motion to amend and Defendants' motions to dismiss on the basis of champerty. By order dated February 14, 1997, the trial court refused to allow Plaintiffs to amend their complaint to include a cause of action for professional negligence, but otherwise granted the motion to amend. As to Defendants' motion to dismiss, the trial court found the agreement and assignments champertous and thus void. Accordingly, the trial court dismissed Plaintiffs' actions for breach of contract and breach of contract accompanied by a fraudulent act, as well as a related cause of action against Reiner.[3]

## DISCUSSION

1. Plaintiffs first argue the doctrine of champerty is not recognized in South Carolina and, therefore, the trial court erred in applying the doctrine. We disagree.

---

3. The trial court did not dismiss Plaintiffs' causes of action for breach of contract based on the promissory note, breach of contract based on the guaranty, breach of contract based on the consulting agreement, and fraud, reasoning that none of the instruments on which these causes of action were based, namely the promissory note, guaranty, and consulting contract, were champertous or tainted by champerty to such an extent warranting dismissal. The trial court dismissed Plaintiffs' cause of action for strict foreclosure to the extent it was based on the champertous assignment and permitted the cause of action to the extent it relied on the note and guaranty.

To date, there are no appellate decisions in this state voiding an agreement as champertous. Nevertheless, the supreme court has given the term "champerty" unfavorable recognition as early as 1830.

[I]f one lay out money in the prosecution of a suit to recover a close, of which his poor neighbor has been deprived, and without which he must lose it, he is no champertor, because right, humanity, and justice would approve it: but if he do it upon a stipulation, that he shall receive one half of the field, if it be recovered, he is, according to the legal definition of this offence, a champertor.

*State v. Chitty,* 17 S.C.L. (1 Bail.) 379, 401 (1830).

In addition, S.C.Code Ann. § 14–1–50 (1977) provides as follows:

**Common law of England shall continue in effect.**

All, and every part, of the common law of England, where it is not altered by the Code or inconsistent with the Constitution or laws of this State, is hereby continued in full force and effect in the same manner as before the adoption of this section.

Without question, the doctrine of champerty is part of the ancient common law of England. Plaintiffs do not argue that the doctrine is inconsistent with our Constitution or that the General Assembly has passed legislation restricting the application of the doctrine. As well, we are aware of no South Carolina case law, and Plaintiffs cite none, expressly abrogating the doctrine.

Plaintiffs direct our attention to several decisions in which the appellate courts of this state have declined to apply the doctrine of champerty to the particular facts and circumstances of a case. *See Padgett v. Sun News,* 278 S.C. 26, 292 S.E.2d 30 (1982) (wherein the supreme court made no ruling on the issue of champerty even though doctrine of champerty was mentioned in the pleadings); *McSwain v. Davis,* 96 S.C. 155, 80 S.E. 87 (1913) (holding that although the court was initially impressed to the contrary, a contract for the purchase of timber in which the purchaser agreed to pay the expenses involved in the lawsuits necessary to perfect the seller's title to timberland was not champertous); *Ex parte Hiers,* 67 S.C. 108, 117, 45 S.E. 146, 149 (1903) (holding that because a

husband and wife are "still regarded as one in law," the trial court erred in finding a wife guilty of champerty solely because she assisted her husband in prosecuting a lawsuit to judgment); *Cooke v. Pool*, 25 S.C. 593 (1886) (upholding trial court's ruling that a judgment was validly assigned to a bona fide purchaser when the purchaser was unaware of the seller's champertous acts); *Fraser & Dill v. Charleston*, 13 S.C. 533, 545 (1880) (reversing the trial court's ruling that certain assignments were "contrary to public policy and as savoring of maintenance"). In each of these cases, the supreme court either declined to apply the doctrine based on the relevant facts and circumstances or avoided addressing the issue altogether. These decisions, then, do not suggest the supreme court intended to abrogate, much less abolish, the doctrine of champerty. To the contrary, the various references to champerty within these decisions suggest a tacit recognition that the doctrine is still valid.

Plaintiffs further argue the prohibition against champerty has no place in modern South Carolina jurisprudence in that it is against presently accepted commercial practices and modern jurisprudence. We reject this argument. The express recognition of the doctrine in *State v. Chitty* and the implicit acknowledgment of the doctrine in later appellate decisions are consistent with current statutes and rules of professional conduct for attorneys. *See* S.C.Code Ann. § 16–17–10 (1985) (prohibiting barratry); S.C.Code Ann. § 16–17–50 (1985) (stating the statutes concerning barratry shall not be construed as repealing any existing statute or the common law); Rule 1.8(j), Rules of Professional Conduct, Rule 407, SCACR (prohibiting a lawyer from acquiring a proprietary interest in a client's case except to secure the lawyer's fee or expenses and to contract with the client for a reasonable contingency fee). Moreover, contrary to Plaintiffs' contention, enforcement of the doctrine of champerty will not make it illegal for banks to lend money to pay legal expenses; rather, the underlying objective of the doctrine is "the prevention of multitudinous and useless lawsuits and ... speculation in lawsuits." 14 C.J.S. *Champerty and Maintenance* § 2, at 147–48 (1991).[4]

---

4. As support for their argument, Plaintiffs cite the case of *Merchants' Protective Ass'n v. Jacobsen*, 22 Idaho 636, 127 P. 315 (Idaho 1912), in which the Idaho Supreme Court reversed a judgment sustaining a

■ 2. The trial court held the agreement was champertous on its face and therefore void. Plaintiffs argue this was error. Although we are not prepared to find, as Plaintiffs contend, that the facts of this case unequivocally do not involve champerty as that term is defined under the common law, we nevertheless hold the trial court erred in finding the agreement and assignments champertous as a matter of law.[5]

Champerty is defined as "a bargain by a champertor with a plaintiff or defendant for a portion of the matter involved in a suit in case of a successful termination of the action, which the champertor undertakes to maintain or carry on at his own expense." 14 Am.Jur.2d *Champerty and Maintenance* § 3 (1964). It is also necessary, however, that the alleged champertor's participation in the litigation be "clearly officious and for the purpose of stirring up strife and continuing litigation." 14 C.J.S. *Champerty and Maintenance* § 1 at 146 (1991). *See also Giambattista v. National Bank of Commerce*, 21 Wash. App. 723, 586 P.2d 1180, 1186 (Wash.Ct.App.1978) (defining champerty as the "intermeddling of a stranger in the litigation of another, for profit" and maintenance as "the financing of such intermeddling"), *review denied* (June 15, 1979); *Temeron, Inc. v. Ferraro Energy Corp.*, 861 P.2d 319, 325 (Okla.Ct. App.1993) ("The gist of the offense or act of champerty and maintenance is an officious intermeddling in a suit which in no way belongs to one, by maintaining or assisting either party with money or otherwise to prosecute or defend it.").

In our view, the circumstances of this case are sufficient to establish issues of fact concerning whether Plaintiffs, in lending the Defendants money for litigation expenses, engaged in

---

demurrer based on the defense of champerty and declared the doctrine inconsistent with the laws of the jurisdiction. *Jacobsen*, however, is distinguishable from the present case in that there the Idaho Supreme Court stated, "[I]t was not contemplated by the lawmakers that the common-law doctrine of champerty should prevail in this territory, and that the lawmakers believed that the only rule governing these matters would be such as might be described by the Legislature....". *Id.*, 127 P. at 318.

5. Although the appealed order dealt with Defendants' motion to dismiss, we agree with Defendants that the motion is more appropriately treated as one for summary judgment because matters outside the pleadings were presented to and not excluded by the trial court. Rule 12(c), SCRCP.

officious intermeddling with the intention to stir up strife or otherwise unnecessarily prolong a lawsuit. The litigation for which the Plaintiffs' financial assistance was sought had been pending in federal court over two years. Plaintiffs did not initiate the negotiations that led to the contract at issue in this appeal, but rather, at the request of Defendants' attorneys, agreed to make Defendants a loan, the repayment of which was provided for in the event the result of the litigation was unfavorable to Defendants.[6] Furthermore, the substantial settlement is evidence that the underlying lender liability claim was valid and not brought frivolously or with wrongful intent. *See State v. Chitty*, 17 S.C .L. (1 Bail.) 379, 401 (1830) ("So if one move or excite others to bring divers civil suits, or criminal prosecutions, in the belief that the ends of justice will be promoted by it, he is not, according to my view of the subject, a barretor; but if he superadd base and unworthy motives, as when he himself is in a situation to use them as a means of gratifying his resentment, or extorting money from the parties, he is a barretor."); *Kraft v. Mason*, 668 So.2d 679, 682 (Fla.Dist.Ct.App.1996) (defining the term "officious" as " 'offering unnecessary and unwanted advice or services, meddlesome, esp. in a highhanded or overbearing way' ") (quoting *Webster's New World Dictionary* 988 (2d col. ed. 1986)), *review dismissed,* 679 So.2d 773 (1996); *Temeron,* 861 P.2d at 325 ("Whether an agreement is champertous or not is a mixed question of law and fact."). We therefore hold further inquiry into the facts surrounding the execution of the agreement is desirable to clarify the application of the law of champerty to this case. *See Hook v. Rothstein,* 275 S.C. 187, 268 S.E.2d 288 (1980) (stating summary judgment should be withheld when inquiry into the facts is desirable to clarify the application of the law); *Jensen v. South Carolina Dep't of Social Servs.,* 297

---

**6.** Defendants cite the case of *Lathrop v. Amherst Bank,* 50 Mass. (9 Met.) 489 (1845) for the proposition that a provision within a champertous agreement for reimbursement for the champertor's expenses if the action proved unsuccessful would not, by itself, validate the agreement. In *Lathrop,* however, the plaintiff had purchased his interest well in advance of the commencement of any litigation; therefore, a more flagrant case of officious intermeddling was involved. Moreover, because the appealed order in this case was issued without a trial on the merits, we believe the provision for repayment to Osprey, though insufficient by itself to negate a charge of champerty, is a circumstance warranting further inquiry into the facts of this case.

S.C. 323, 334, 377 S.E.2d 102, 108 (Ct.App.1988) ("[W]here the allegations of the complaint give rise to competing inferences on a question of material fact, dismissal of the case under Rule 12(b)(6) is not appropriate."), *aff'd sub nom., Jensen v. Anderson County Dep't of Social Servs.*, 304 S.C. 195, 403 S.E.2d 615 (1991).[7]

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

HUFF and HOWARD, JJ., concur.

---

7. In their brief, Defendants argued other grounds for dismissal of all causes of action in this case. Because, however, the parties agreed to schedule oral argument on these alternate grounds for dismissal, we decline to address them before the trial court has had the opportunity to rule on them. *See Brashier v. South Carolina*, 327 S.C. 179 n. 7, 490 S.E.2d 8 n. 7 (1997) (stating a proposition must be both raised to and ruled on by the trial court to warrant consideration as an additional sustaining ground on appeal).